UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLIFFORD L. G.[1],

           Plaintiff,

                                                              Civil Action No. 23-13051

v.

                                                              David R. Grand
                                                              United States Magistrate Judge[2]

COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.
_____/

**OPINION AND ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT (ECF Nos. 10, 12)**

Plaintiff Clifford L. G. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed motions for summary judgment. (ECF Nos. 10, 12).

For the reasons set forth below, the Court finds that the ALJ's conclusion that Plaintiff is not disabled under the Act is not supported by substantial evidence. Thus, the Commissioner's Motion for Summary Judgment **(ECF No. 12)** will be **DENIED**; Plaintiff's Motion for Summary Judgment **(ECF No. 10)** will be **GRANTED**; and this case

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The parties have consented to the undersigned exercising jurisdiction over all proceedings in this civil action pursuant to 28 U.S.C. § 636(c). (ECF No. 8).

will be **REMANDED** to the Commissioner for further proceedings consistent with this Opinion.

### A. Background

Plaintiff was between 40 and 43 years old during the relevant time period,[3] and at 6'2" tall weighed approximately 280 pounds during the relevant time period. (PageID.39, 133, 414).[4] He completed high school and two years of college and obtained specialized training in automotive welding. (PageID.69, 416). For approximately fifteen years, he worked as a molding technician at a plastic injection company, until he was fired on March 1, 2016, because he "could not do the job as they wanted" as a result of his medical conditions. (PageID.414-16, 424). He now alleges disability primarily as a result of post-surgical fractures of both feet, tarsal tunnel syndrome and tendonitis of the right foot, tibial neuropathy, bilateral foot polyneuropathy, degenerative disc disease, obesity, anxiety, and depression. (PageID.133-34, 414).

After Plaintiff's current application for DIB was denied at the initial level on August 18, 2020 (PageID.210-13), and on reconsideration on February 17, 2021 (PageID.232-34), he timely requested an administrative hearing, which was held on July 22, 2021, before

---

[3] Plaintiff previously filed an application for DIB on June 14, 2016. (PageID.39). That claim was denied initially and on reconsideration. (*Id.*). On August 14, 2018, ALJ Adam Dale issued a written decision denying that application. (PageID.119-28). ALJ Mikel Lupisella, who adjudicated the instant claim, determined that "new and material evidence exists to support a departure from the findings reached in [that] prior decision." (PageID.40). Thus, the period at issue begins on August 15, 2018, the date following the issuance of ALJ Dale's decision, and runs through December 31, 2021, Plaintiff's date last insured.

[4] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 6-1.

2

ALJ Mikel Lupisella (PageID.86-115).  Plaintiff, who was represented by attorney Janice Brownson, testified at the hearing, as did vocational expert ("VE") Guy Hostetler.  (*Id.*).  On September 22, 2021, ALJ Lupisella issued a written decision finding that Plaintiff was not disabled under the Act between his alleged onset date (March 1, 2016) and the date of the ALJ's decision.  (PageID.176-94).

On October 19, 2022, the Appeals Council reviewed ALJ Lupisella's decision and issued an order vacating the decision and remanding the case back to the ALJ.  (PageID.200-01).  On remand, a second administrative hearing was held before ALJ Lupisella on February 15, 2023.  (PageID.61-85).  Plaintiff, who was again represented by attorney Brownson, testified at the hearing, as did VE Adolph Cwik.  (*Id.*).  On May 3, 2023, ALJ Lupisella issued a written decision, finding that Plaintiff was not disabled under the Act between his alleged onset date (August 15, 2018) and his date last insured (December 31, 2021).  (PageID.39-54).  On October 5, 2023, the Appeals Council denied review.  (PageID.25-29).  Plaintiff timely filed for judicial review of the final decision on December 1, 2023.  (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, disability reports, and testimony as to his conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

  **B.**  **The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB are available only for those who have a "disability."  *See Colvin*

*v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human*

4

*Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff was not disabled under the Act during the relevant time period (August 15, 2018, through December 31, 2021). At Step One, the ALJ found that Plaintiff did not engage in substantial gainful activity during that period. (PageID.42). At Step Two, the ALJ found that he had the severe impairments of degenerative disc disease, tarsal tunnel syndrome and tendonitis of the right foot, residual injury and surgery of the right foot, tibial neuropathy, bilateral foot polyneuropathy, obesity, anxiety, depression, and alcohol abuse. (*Id.*). At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Plaintiff's RFC, concluding that, during the relevant time period, he was capable of performing light work, with the following additional limitations: could not climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs; could occasionally balance on narrow, slippery, or erratically moving surfaces; could occasionally stoop, kneel, crouch, and crawl; could have no exposure to vibration, such as vibratory tools or machinery; could have no exposure to hazards, such as unprotected heights or dangerous, moving machinery; could not operate a motor vehicle as part of his work duties; was able to understand, carry out, and remember simple instructions; was limited to simple and routine tasks performed in a work environment free of fast-paced production requirements (i.e., no work on an assembly line), involving only simple, work-related decisions and routine workplace changes; was limited to only occasional interaction with co-workers and supervisors; was limited to no transactional interaction with the public

5

(i.e., sales, negotiation, customer service, or resolution of disputes); the work itself should have dealt with things, rather than people, throughout a typical workday; and there should have been no tandem tasks or teamwork required. (PageID.44-45).

At Step Four, the ALJ found that, during the relevant time period, Plaintiff was not able to perform any of his past relevant work. (PageID.51). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Plaintiff was capable of performing the light jobs of electrical accessories assembler (34,200 jobs in the national economy), industrial bagger (13,100 jobs), and hammermill operator (11,400 jobs). (PageID.52-53). As a result, the ALJ concluded that, during the relevant time period, Plaintiff was not disabled under the Act. (PageID.53).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such

6

evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D. Analysis**

In his motion for summary judgment, Plaintiff argues that the ALJ failed to properly evaluate his subjective complaints of pain and other symptoms and failed to adequately develop the record with opinion evidence. (ECF No. 10). The Court will address those

arguments in turn.

                    1.     *The ALJ Erred in Evaluating Plaintiff's Subjective Symptoms*

                        a.     *Evaluating Subjective Symptoms*

When a claimant alleges symptoms of disabling severity, an ALJ must follow a two-step process for evaluating those symptoms. *See Moore v. Comm'r of Soc. Sec.,* 573 F. App'x 540, 542 (6th Cir. 2014); *Massey v. Comm'r of Soc. Sec.*, 409 F. App'x 917, 921 (6th Cir. 2011). First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms. Here, the ALJ specifically found that Plaintiff's medically determinable physical impairments – most relevant here, his back and leg/foot pain – could reasonably be expected to cause his alleged symptoms.[5] (PageID.46).

Second, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c)(1); *see also* Soc. Sec. Rul. ("SSR") 16-3p, 2016 WL 1119029, at *4 (March 16, 2016). In evaluating a claimant's symptoms at the second step of the analysis, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence in the record. *See* SSR 16-3p, 2016 WL 1119029, at *4. Beyond medical evidence, the ALJ should consider seven factors: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors

---

[5] Because Plaintiff's arguments center around his physical impairments, the Court will focus its discussion on medical and other evidence pertaining to those conditions.

that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at \*7. The ALJ need not exhaustively discuss each of these factors – or all of the evidence in the record – but need only acknowledge the factors and discuss the evidence that supports the decision. *See Robinson v. Comm'r of Soc. Sec.*, No. 20-12117, 2022 WL 1043869, at \*3 (E.D. Mich. Jan. 18, 2022). However, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2016 WL 1119029, at \*9.

In this case, with respect to Plaintiff's subjective complaints, the ALJ said:

> … the record reflects an overall treatment course disproportionate to the alleged severity of the claimant's impairments. During the pertinent period at issue, there is no evidence of surgical interventions, frequent inpatient treatment, repeated emergency care, or other aggressive treatment modalities. The claimant occasionally presented to his pain management specialist, primary physician, and physical therapy; however, each pursued conservative treatment consisting of prescribed medication, injections, home exercise, and therapeutic care. Further, the claimant frequently noted some relief of his pain symptoms for some period with medication and injections, without any significantly limiting side effects. Simply, if the claimant's symptoms and limitations were truly as severe as alleged, the undersigned would expect [to] see medical treatment far more

9

aggressive than portrayed in the record.

(PageID.48). For the reasons set forth below, the Court finds that the ALJ erred in his characterizations of the medical evidence regarding Plaintiff's physical impairments and in relying on those characterizations to discount Plaintiff's subjective complaints.

          *b.*     *The ALJ's Characterization of the Relevant Medical Evidence*

As set forth above, in determining that Plaintiff's symptoms were not as severe as alleged, the ALJ considered the relevant medical evidence, as required by SSR 16-3p. (PageID.46-48). In this respect, the ALJ concluded that Plaintiff's pain management specialist and primary care physician primarily pursued only "conservative treatment" and that Plaintiff "frequently noted some relief of his pain symptoms for some period with medication and injections …." (PageID.48). Both aspects of the ALJ's conclusion are problematic, however, as much of the evidence cited by the ALJ in discounting Plaintiff's subjective complaints was taken from medical records where evidence to the contrary was not meaningfully considered by the ALJ, leaving the Court unable to perform the review contemplated by SSR 16-3p. For example:

- According to the ALJ, on September 17, 2018, Plaintiff stated that his neuropathic pain medication (Gabapentin and Lyrica) was "helping." (PageID.46). The ALJ also focused on the fact that Plaintiff's spine had full range of motion and normal alignment; his legs had full strength and range of motion bilaterally; and his straight leg raise was negative. (*Id.*) (citing PageID.672, 674). In reality, the medical records indicate that, on that date, Plaintiff reported having undergone bilateral SI joint injections that "did not work at all" but instead made his pain worse. (PageID.672). He also reported that his lower back and bilateral feet were throbbing; his back pain was worse with bending forward; the injections previously administered "only last[ed] a couple of days"; and his medications did not help. (*Id.*). On examination, he had a limping gait and tenderness of the lower lumbar region and SI joints, which the ALJ did not mention. (PageID.674).

10

- The ALJ next stated that, on January 2, April 9, and October 11, 2019, Plaintiff was taking Tylenol #4 regularly with "reported relief." (PageID.46) (citing PageID.704, 712, 720). In reality, at each of these visits, Plaintiff's gait and station were abnormal (he was slow to rise from a chair and had a slight limp), which the ALJ did not mention. (PageID.706, 714, 722). At one visit, he reported that Tylenol #4 provided *some* relief, but he still complained of low back and bilateral lower extremity pain. (PageID.712).

- According to the ALJ, at a visit to pain management provider Spencer Bertram, M.D. on May 1, 2020, Plaintiff expressed some improvement in flexibility and had normal strength, sensation, and coordination and full range of motion of the right foot. (PageID.47) (citing PageID.687). The ALJ did not mention, however, that on that same day, Plaintiff reported recently completing physical therapy for low back pain, indicating that he had some improved flexibility "but no relief of his pain." (PageID.687). Dr. Bertram summarized Plaintiff's progress as follows: "In the last 6 months, [Plaintiff] *has implemented conservative treatments* including but not limited to physical therapy, home exercises, and oral analgesics including anti-inflammatory medications and muscle relaxers to treat his pain *and has not experienced a measurable improvement*." (*Id.*) (emphasis added). A plan was made to move forward with bilateral SI joint injections. (*Id.*). Moreover, on examination, Plaintiff had reproduction of back and hip pain in response to Patrick's, Fortin's, thigh thrust and Gaenslen's tests bilaterally. (*Id.*). The ALJ made no mention of these findings.

- According to the ALJ, on May 14, 2020, Plaintiff reported significant relief in his bilateral thighs and buttock area after undergoing bilateral SI joint injections, as well as 50% pain relief with physical therapy. (PageID.47) (citing PageID.845). The ALJ also noted that Plaintiff denied weakness/numbness and had a negative Patrick sign bilaterally. (*Id.*). Elsewhere in this same treatment record, however, Plaintiff reported continued low back and bilateral foot pain, which was worse with sitting, standing, and walking. (PageID.845). The records further indicate that Plaintiff was working to arrange a psychological evaluation before proceeding with possible peripheral nerve stimulation. (*Id.*).

- The ALJ next noted that, at several follow-up visits to Ashley Wolosonowich, N.P. (of Dr. Bertram's office) between May and December 2020, Plaintiff's neck had full range of motion; he had no focal neurological deficits; and he had normal strength, sensation, and coordination. (PageID.47) (citing PageID.772, 775, 805, 808, 847). At the same visits, however, there were contrary findings that the ALJ did not mention. For example, on June 18, 2020, Plaintiff had production of low back pain on

11

extension and facet loading bilaterally and limited range of motion on extension of the lumbar spine. (PageID.772). At the same visit, it was again stated that Plaintiff had implemented conservative treatments but had "not experienced a measurable improvement." (*Id.*). Moreover, it was noted that Plaintiff would be scheduled for diagnostic medial branch blocks of the lumbar facet joints bilaterally at L3-4, L4-5, and L5-S1. (*Id.*). The same findings were made at other visits during this time period. (PageID.775 (explicitly noting that Plaintiff had failed conservative treatment and was "mov[ing] forward with an interventional plan"), 805, 808, 847 (same)).[6]

- The ALJ noted that, in December 2020, Plaintiff reported at least 80% improvement in pain with the medial branch blocks. (PageID.47) (citing PageID.835-36). What the records show, however, is that at a December 18, 2020 visit to NP Wolosonowich, Plaintiff reported 80% pain relief ***for 6 hours following the lumbar medial branch block injection***. (PageID.835). It was further noted that, "[u]nfortunately his pain is now returned." (*Id.*). NP Wolosonowich therefore ordered a radiofrequency ablation ("RFA") at four levels of Plaintiff's lumbosacral spine. (PageID.837).

- The ALJ next noted that, by February 2021, Plaintiff reported "dramatic improvement in functionality and pain level after two diagnostic medial branch blocks of the facet joints."[7] (PageID.47) (citing PageID.849). Again, however, this is a reference to Plaintiff's reported 80% pain relief *for a mere 6 hours* immediately following the medial branch blocks performed in December 2020, and Plaintiff indicated his pain had returned (7-9/10 on pain scale; frequent and constant) thereafter. (PageID.849). Thus, on February

---

[6] During this time period, NP Wolosonowich also noted on multiple occasions that Plaintiff had low back pain on extension and bilateral facet loading and limited lumbar extension (PageID.772, 801-02, 805); that he was "in obvious discomfort" and slow to transition from seated to standing (PageID.775, 800, 805); and that he had right foot tenderness (PageID.805). And, contrary to the Commissioner's argument, Plaintiff did not "fail[] to cite even one medical report that substantiates his claim" that these findings were made. (ECF No. 12, PageID.1049). Indeed, Plaintiff repeatedly cited medical records for these propositions. (ECF No. 10, PageID.1022, 1023, 1024, 1025, 1026, 1027).

[7] In his motion for summary judgment, Plaintiff argues that this statement "was almost certainly a typographical error given the other notations clearly stating that there was not a dramatic improvement with medial branch blocks." (ECF No. 10, PageID.1029-30) (emphasis in original). The Commissioner disagrees, asserting that it was possible Dr. Bertram determined that the "dramatic" – although fleeting – improvement in functioning and pain levels after the medial branch blocks is what informed his decision to move forward with an RFA. (ECF No. 12, PageID.1051) (citing PageID.849). The Court need not resolve this issue because, regardless, Dr. Bertram decided to proceed with an RFA, which is an even more invasive procedure than the medial branch blocks.

12

18, 2021, Dr. Bertram performed the RFA. (PageID.849). It was later noted that this procedure provided Plaintiff *some* relief, but "it was not long-lasting." (PageID.990).

- According to the ALJ, on September 9, 2022, Plaintiff reported 100% relief in his right foot pain for at least four hours with a tibial nerve block and 50% relief and improved functionality thereafter. (PageID.47) (citing PageID.959). Plaintiff did indeed indicate the right posterior tibial nerve block performed in March 2020 gave him 100% pain relief *for 4 hours* following the procedure "and then *several days* of 50% pain relief." (PageID.959) (emphasis added). At the time of the cited visit, however, Plaintiff also reported worsening low back pain over the past few months with accompanying worsening radiculopathy into the L4 distribution. (PageID.959). On examination, he had pain on extension and side bending, as well as discogenic pain at L4-L5 and L5-S1. (PageID.961). An MRI of the lumbar spine was ordered. None of this was mentioned by the ALJ.

- The ALJ then stated that, on November 7, 2022, Plaintiff's pain management specialist administered steroid injections for his lumbar spine pain with 70% relief. (PageID.48) (citing PageID.931). While this statement is accurate, Plaintiff also reported worsening symptoms of burning in the bilateral feet; he had weakness in the lower extremities; and he had limited range of motion in the lumbar spine. (PageID.931-33). Thus, the impression given by the ALJ – that Plaintiff presented to this appointment with lessening complaints of pain overall – is not accurate.

Finally, one of the biggest reasons the ALJ discounted Plaintiff's subjective complaints was his overarching conclusion that Plaintiff "occasionally presented to his pain management specialist, primary physician, and physical therapy; however, each pursued only *conservative treatment* consisting of prescribed medication, injections, home exercise, and therapeutic care."[8] (PageID.48) (emphasis added). In characterizing Plaintiff's

---

[8] Indeed, the ALJ went so far as to indicate that, given Plaintiff's subjective complaints, he would have expected to see evidence of "surgical interventions, frequent inpatient treatment, repeated emergency care, or other aggressive treatment modalities." (PageID.48). However, there is no requirement that a claimant undergo specific forms of treatment in order to be found disabled. *See, e.g., Wolfe v. Comm'r of Soc. Sec.*, No. 15-13854, 2016 WL 7741740, at *8 (E.D. Mich. Dec. 15, 2016) ("[A] claimant need not be bedridden to qualify for disability benefits.") (internal quotations

13

treatment as "conservative" in nature, however, the ALJ ignored the fact that Plaintiff's own providers described his treatment very differently. For example, on June 18, 2020, NP Wolosonowich discussed various "conservative" treatments Plaintiff had tried – including physical therapy, home exercises, anti-inflammatory medications, and muscle relaxers – and noted that he had "not experienced a measurable improvement." (PageID.772). She then stated: "Therefore, we will move forward with an interventional plan." (*Id.*). This "interventional plan" included diagnostic medial branch blocks of the lumbar facet joints bilaterally. (*Id.*). Thus, contrary to the ALJ's characterization, and the cases cited by the Commissioner (ECF No. 12, PageID.1053), it appears that Plaintiff's own providers deemed the procedures performed on him as more than "conservative" treatment.

As set forth above, a detailed review of the medical evidence relied on by the ALJ belies his conclusion that Plaintiff primarily pursued "conservative treatment" and "frequently noted some relief of his pain symptoms for some period with medication and injections …." (PageID.48). While – read generously – Plaintiff's pain management records show that he experienced *some* temporary improvement in his back and foot pain with various combinations of medications, procedures, and interventions, they can hardly be read to show that his providers were pleased with the success of the treatments provided. Indeed, Dr. Bertram and NP Wolosonowich stated on multiple occasions that Plaintiff had

---

omitted); *McGinnis-Overton v. Barnhart*, No. 02 C 5726, 2003 WL 22006252, at *5 (N.D. Ill. Aug. 20, 2003) ("We are reluctant to require a plaintiff undergo back surgery before he or she can be found disabled.").

failed various types of conservative treatment, and increasingly invasive interventional measures were repeatedly pursued. (PageID.687 (Plaintiff "implemented conservative treatments" without "measurable improvement"; thus, the plan was to "move forward with a bilateral sacroiliac joint injection"), 772 (no measurable improvement with conservative treatments; "move forward with an interventional plan" that included diagnostic medial branch blocks), 775 (same), 835-37 (moving forward with an RFA after medial branch blocks failed to provide sustained pain relief)).

In summary, the record shows numerous treatments of escalating severity, all of which were without sustained success, and there was no indication of what could be tried next to address Plaintiff's back pain. While it is true that the ALJ need not discuss every piece of evidence in the record, *Kornecky*, 167 F. App'x at 508, his discussion must be thorough enough to enable the Court to determine whether the ALJ's findings are supported by substantial evidence. *See Trudell ex rel. Bushong v. Apfel*, 130 F. Supp. 2d 891, 895 (E.D. Mich. 2001) ("Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.") (internal quotations omitted); *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) ("a substantiality of evidence evaluation does not permit a selective reading of the record"). Here, in light of the foregoing, the ALJ's selective reading of the relevant medical records simply does not constitute substantial evidence to reject Plaintiff's subjective complaints. As such, remand is warranted.

      *2.*    *The ALJ Should Consider the Need to Further Develop the Record*

Plaintiff also argues that ALJ Lupisella failed to adequately develop the record with opinion evidence. (ECF No. 10, PageID.1031-33). In his motion, Plaintiff asserts that while the ALJ found that new and material evidence existed supporting a departure from the RFC finding in ALJ Dale's 2018 decision, in the form of updated records showing "treatment for degeneration in [Plaintiff's] cervical and lumbar spine" (PageID.46), the only two physical health opinions to which ALJ Lupisella had access were two non-examining opinions that simply concluded there was "no new evidence available" since the 2018 ALJ decision and adopted that decision's RFC in its entirety (PageID.142, 163).[9] (ECF No. 10, PageID.1032). The ALJ's only explanation for deviating from these two opinions was that the record showed "more limitations, particularly in range of motion, due to back pain." (PageID.50). Plaintiff argues that his range of motion over time is not a sufficient basis for a layperson, such as the ALJ, to craft an RFC, and that the ALJ erred in failing to solicit an opinion that evaluated the updated medical record. (ECF No. 10, PageID.1017).

The ALJ has a "basic obligation to develop a full and fair record." *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). This is because "Social [S]ecurity proceedings, unlike judicial ones, are inquisitorial, not adversarial." *Wright-*

---

[9] Specifically, on August 6, 2020, Ashok Sachdev, M.D. reviewed the record and explicitly found that there was "no new evidence available [that was] material in decision making at present" and adopted the 2018 ALJ decision in its entirety. (PageID.142). And, on February 15, 2021, Edward Brophy, D.O. reviewed the record and adopted Dr. Sachdev's opinion – and therefore ALJ Dale's 2018 RFC assessment – "as written." (PageID.160-63).

16

*Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 397 (6th Cir. 2010) (citing *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000)). While an ALJ need not obtain an opinion in every instance, "where a 'critical body' of the 'objective medical evidence' is not accounted for by a medical opinion and there is significant evidence of potentially disabling conditions, the ALJ should develop the record by obtaining opinion evidence that accounts for the entire relevant period." *McCauley v. Comm'r of Soc. Sec.*, No. 20-13069, 2021 WL 5871527, at *14 (E.D. Mich. Nov. 17, 2021).

Here, the ALJ recognized a change in the record evidence between the issuance of ALJ Dale's 2018 decision and the decision at issue in this case. (PageID.46 (finding that the updated record – which "showed treatment for degeneration in [Plaintiff's] cervical and lumbar spine" – contained "new and material evidence" supporting a departure from the 2018 RFC)). However, the only available opinion evidence analyzing treatment records that post-dated ALJ Dale's decision came from sources who unambiguously adopted the 2018 RFC wholesale. (PageID.142, 163). Not only did the ALJ opt to proceed without further guidance – which the Court recognizes is not itself problematic[10] – but he then

---

[10] Contrary to the Commissioner's position, the Court does not view "the underlying premise of Plaintiff's argument [to be] that the ALJ needs a medical opinion to support his RFC finding" (ECF No. 12, PageID.1057), and the Court expressly recognizes that there is no "categorical rule" (*id.*, PageID.1059) that an RFC must mirror a medical opinion. *See, e.g., Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding …."). The problem here, however, is that *the ALJ himself* concluded that the record contained "new and material evidence" warranting a different RFC than that contained in the 2018 decision; the only medical opinions in the record explicitly contradicted the ALJ on this point; the

17

fashioned Plaintiff's new RFC by interpreting imaging results and characterizing advanced treatment modalities on his own, without soliciting a new medical opinion that considered this evidence. And, as explained above, in doing so, the ALJ appears to have reached conclusions that were contrary to those of Plaintiff's treating providers. (*E.g.*, PageID.48 (ALJ stating that treatment was conservative and provided some pain relief); PageID.687, 772, 775 (notes stating that Plaintiff failed conservative treatment); PageID.803, 807 (indicating that Plaintiff failed medial branch blocks)).

In addition, the ALJ made medical judgments as to the relative worth of clinical findings of full strength and sensation and full range of motion, apparently finding them more significant than findings of a limping gait, tenderness and tightness, and difficulty with moving from sitting to standing (for example) without explanation.[11] (PageID.46). At least without a more full explanation as to how the ALJ weighed that competing evidence so that the Court could perform its substantial evidence review, this was inappropriate. *See Scott v. Comm'r of Soc. Sec.*, No. 16-11922, 2017 WL 2837150, at *12

---

ALJ interpreted certain medical evidence without meaningful explanation (as discussed below); and yet the ALJ did not obtain additional opinion evidence that would have explained (or presumably supported) his conclusion. Under these circumstances, and given that this case will be remanded for the reasons stated above, it is appropriate for the ALJ to consider obtaining the type of additional medical opinion evidence suggested by Plaintiff.

[11] The Commissioner argues that "ALJs are capable of interpreting evidence regarding a claimant's strength and range of motion." (ECF No. 12, PageID.1045). While it might be true that, under some circumstances, an ALJ is not necessarily "interpreting raw medical data" when he relies on physical examination findings of this nature, here, the ALJ provided no explanation as to why he gave certain clinical findings more weight than others. Given the fact that the ALJ's decision to discount Plaintiff's subjective complaints stemmed, in large part, from his interpretation of the medical evidence, the ALJ's decision to rely on certain medical findings but not others, without explanation, does not permit the Court to perform its "substantial evidence" review.

(E.D. Mich. May 23, 2017) ("Courts in this circuit have regularly noted that, while it is for the ALJ to weigh the medical evidence, ALJs are not qualified to interpret raw medical data, and may not play doctor.") (internal quotations omitted) (citing cases); *see also Timothy R. J. v. Comm'r of Soc. Sec.*, No. 3:22-cv-216, 2023 WL 2258524, at *3 (S.D. Ohio Feb. 28, 2023) (ALJ must obtain opinion evidence to satisfy his duty to develop the record when he otherwise would be required to make medical judgments about a claimant's functional abilities by interpreting raw medical data).[12] Thus, while the Court will not go so far as to say that the ALJ must order an additional medical opinion, on remand, he should consider his ability to fully and fairly render a decision in this case without one. And, if the ALJ concludes that no such additional opinion is required, he should explain the basis for that conclusion.

### E. Conclusion

For the foregoing reasons, the Court **DENIES** the Commissioner's Motion for Summary Judgment **(ECF No. 12)**; **GRANTS** Plaintiff's Motion for Summary Judgment **(ECF No. 10)**; and, pursuant to sentence four of 42 U.S.C. § 405(g), **REMANDS** this case to the ALJ for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED.**

---

[12] It bears mentioning that in a July 28, 2021, letter to ALJ Lupisella, Plaintiff's counsel made the ALJ aware that she had "sen[t] a medical source statement for completion to [Plaintiff's] pain management [providers] but they responded 'We do not have the ability to determine the level of disability. Patient should have a functional evaluation.'" (PageID.519). Plaintiff's counsel then explicitly advised the ALJ that "[s]uch an evaluation is not covered by state insurance and [Plaintiff] does not have the resources to pay for such an evaluation." (*Id.*). Thus, the ALJ was (or should have been) aware that the record lacked an updated medical opinion that considered evidence post-dating ALJ Dale's 2018 decision.

Dated: March 24, 2025          s/David R. Grand
Ann Arbor, Michigan          DAVID R. GRAND
         United States Magistrate Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 24, 2025.

         s/Eddrey O. Butts
         EDDREY O. BUTTS
         Case Manager